United States District Court
Southern District of Texas
**ENTERED**
August 13, 2021
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TUBULAR ROLLERS, LLC, *et al*, | § § § | |
| Plaintiffs, | § | |
| VS. | § § | CIVIL ACTION NO. 4:19-CV-3113 |
| MAXIMUS OILFIELD PRODUCTS, LLC, *et al*, | § § § § | |
| Defendants. | § § | |

## ORDER

Pending before the Court are the Plaintiffs', Tubular Rollers, LLC ("Tubular"), Rolling Tool, Inc. ("Rolling Tool"), and H. Lester Wald (collectively, the "Plaintiffs"), Limited Motion to Reconsider (Doc. No. 54) and the Defendants', Maximus Oilfield Products, LLC ("Maximus") and Nabors Drilling Technologies USA, Inc. ("Nabors Drilling") (collectively, the "Defendants"), Second Motion for Summary Judgment. (Doc. No. 58). Both motions have been fully briefed. After considering the briefing and applicable law, the Court denies the Plaintiffs' motion and denies in part and grants in part the Defendants' motion.

### I.   Background

Plaintiffs are the owners of the Patents-in-Suit, all of which relate to a tool for moving oil and gas drilling pipes called "tubulars." The Patents cover the tubular-moving tool and related method. The '224 Patent was originally issued in 2015. (Doc. No. 28, Ex. 1). The '009 Patent was a continuation of the '224 Patent and was issued in 2016. (Doc. No. 28, Ex. 2). Lastly, the '915 Patent was a continuation of the '009 Patent (and thus a further continuation of the '224 Patent). (Doc. No. 28, Ex. 3). The '915 Patent was issued in 2017. (*Id.*).

According to Plaintiffs, tubulars "are typically hollow steel or aluminum alloy pipe [that] come in a variety of sizes, strengths, and wall thickness, and are typically 30 to 45 feet in length. Each piece of pipe is very heavy, weighing between 1100 and 3600 pounds." (*Id.* at 7). The customary technique of stacking tubulars is for workers to stand on both ends of the pipe and roll each piece to a pipe rack where the tubulars are stacked several layers deep. (*See id.*). This "hand-over-hand" technique is time consuming and can result in injuries to the workers. (*See id.* at 7–8).

The Patents-in-Suit first came into being in 2014 when Andrew J. Cogburn, Jr. invented a tool to assist in moving the tubulars. (*See id.* at 8). According to Plaintiffs, the tool covered by and used in conjunction with the Patents "is inserted into the [tubular] and has a handle that extends out from [it], allowing the workers to hold the handle of the tool rather than touching the [tubular] itself. The inventions facilitate moving pipe and also reduce injuries associate with handling the pipe, such as hand injuries." (*Id.*).

According to Plaintiffs' Complaint, Defendant Maximus manufactures "pipe-handling tools" that allegedly infringe the Patents-in-Suit and sells those tools to Defendant Nabors Drilling, who uses them in its drilling operations. (Doc. No. 1 at 6–12). Defendants, of course, disagree; they assert that the accused product "is not a rolling tool, but a sliding tool." (Doc. No. 29 at 5–6). Additionally, Defendants claim the product is different because, unlike the invention covered by the Patents, it has "circular spacers—typically, greased circular spacers—that remain stationary while the racked tubular rolls." (*Id.* at 6) (emphasis omitted; footnote omitted).

The Court held a *Markman* hearing in this case and subsequently issued a Memorandum and Order on Claim Construction. (Doc. No. 35). Relevant to the resolution of the Plaintiffs' motion to reconsider is the Court's construction of the term "parallel." The Plaintiffs' proposed construction of the term was "everywhere equally distant, including collinear" and the Defendants'

proposed construction was "extending in the same direction, everywhere equidistant, and not meeting." (*See id.*). The Court adopted the Defendants' proposed construction, finding that it was basically the plain and ordinary meaning of "parallel." The Court further explained:

> Plaintiffs argue that the specification clarifies that parallel axes must include a smaller subset of collinear axes. (*See* Doc. No. 28 at 13 (quoting Doc. No. 28, Ex. 1 at 16 ("Preferably these axes are parallel and most preferably these axes are collinear.")). Additionally, Plaintiffs assert that the Patents' claims depend on "parallel" and "collinear" not being mutually exclusive. (*Id.* at 14–15). Nothing in this order precludes Plaintiffs from arguing that collinear axes are parallel. Indeed, at the *Markman* Hearing, Plaintiffs' counsel suggested they would make such an argument. By the same token, however, the Court will not stop Defendants from arguing that collinear lines are not parallel. Regardless of which party ultimately prevails on this issue, it is not relevant to the Court's construction of the term "parallel."

(*Id.* at 15–16).

The Defendants then moved for summary judgment, which this Court granted in part and denied in part (Doc. No. 53). In doing so, the Court explained:

> The images [of the accused device] show clearly that, even if the wheel section and handle section . . . could be considered two separate axes, those axes are certainly not parallel. The operative part of the definition of the term "parallel" here is "not meeting." Whether defined by this Court or by Euclid, parallel lines, by definition, do not meet. Here, if the Accused Tools have more than one axis, those axes either meet in the center of the tool or they are collinear . . . . Plaintiffs have attempted to argue that "parallel axes must include a smaller subset of collinear lines," (Doc. No. 48 at 6), but the terms "parallel" and "collinear," as defined by this Court using their ordinary and customary meanings, are in fact mutually exclusive. "Parallel" means "extending in the same direction, everywhere equidistant, and not meeting." (Doc. No. 35 at 16). "Collinear" means "lying on or passing through the same straight line." (*Id.* at 17). If two axes are equidistant and do not meet, then, necessarily, they never lie on or pass through the same straight line. As evident from the images, it is possible that the Accused Tools have two axes that are collinear, but it is not possible that the same two axes are parallel.

(*Id.* at 8). The Plaintiffs have now moved the Court to reconsider the above language from the summary judgment order that ruled that the terms "collinear" and "parallel" are mutually exclusive. Further, the Court held on a different point that summary judgment was premature, but

3

left open the possibility that the Defendants could move again at a later date (*see id.* at 9–10), which they have now done.

## II. Plaintiffs' Motion to Reconsider

### A. Legal Standard

The Federal Rules do not specifically provide for a "motion to reconsider," so courts in the Fifth Circuit treat such a motion as a "either a Rule 59(e) motion to alter or amend judgment or a Rule 60(b) motion for relief from judgment or order" depending on the timing of the motion. *Shepherd v. Int'l Paper Co.*, 372 F.3d 326, 328 n.1 (5th Cir. 2004). If the motion is filed within 28 days of the judgment or order of which the party complains, it is considered a Rule 59(e) motion; otherwise, it is treated as a Rule 60(b) motion.[1] *Clearline Techs. Ltd. v. Cooper B-Line, Inc.*, 871 F. Supp. 2d 607, 617 (S.D. Tex. 2012).

Here, the Plaintiffs filed their motion on the 28th day after this Court's order denying summary judgment. (*See* Doc. No. 53 (order entered December 9) and Doc. No. 54 (motion to reconsider filed January 6). Therefore, this Court will treat the motion as a Rule 59(e) motion. *Clearline*, 871 F. Supp. 2d at 617.

A motion to alter or amend under Rule 59(e) "must clearly establish either a manifest error of law or fact or must present newly discovered evidence" and "cannot be used to raise arguments which could, and should, have been made before the judgment issued." *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 863–64 (5th Cir. 2003). A district court has considerable discretion as to

---

[1] The Western District has explained:

> In *Shepherd*, the Fifth Circuit held that a motion for reconsideration should be considered a Rule 59(e) motion if filed within ten days of the judgment or order in question. *Shepherd*, 372 F.3d at 328 n.1. That timeline was derived from the then-existing requirement that Rule 59(e) motions be filed within ten days of the judgment or order of which the party complained. The 2009 amendments to the Federal Rules changed that deadline. Today, a motion to alter or amend a judgment must be filed no later than 28 days after the entry of judgment. Fed. R. Civ. P. 59(e).

*Halprin v. Fed. Deposit Ins. Corp.*, 5:13-CV-1042-RP, 2016 WL 5724606, at *1 n.1 (W.D. Tex. Sept. 30, 2016).

4

whether to grant a Rule 59(e) motion. *Clearline*, 871 F. Supp. 2d at 617.

**B.     Analysis**

The Plaintiffs' motion does not "argue a new legal theory or submit new evidence." (Doc. No. 54 at 3). Instead, according to the Plaintiffs, "the Court's summary judgment order suggests that the Court erred in its claim construction finding, error which was not initially apparent on the fact of the claim construction Order" and the "Plaintiffs request the Court reconsider its claim construction ruling with regard to the term 'parallel.'" (*Id.*). In support of this request, the Plaintiffs contend, for the first time, that the language in the Patents-in-Suit demonstrates that the patentee intended to be his own lexicographer, defining "collinear" axes as a subset of "parallel" axes. Further, the Plaintiffs argue that the Court's language characterizing "collinear" and "parallel" as mutually exclusive violates the principle that claims should be construed to cover the preferred embodiment.

After reconsidering its prior order, the Court sees no reason to change either its Claim Construction Order or its Order on summary judgment. At the claim construction stage, the Court found no compelling reason that the term "parallel" would not be given its ordinary and customary meaning. *See Aventis Pharm., Inc. v. Amino Chems. Ltd.*, 715 F.3d 1363, 1373 (Fed. Cir. 2013) ("There is a heavy presumption that claim terms are to be given their ordinary and customary meaning.") (citations omitted). The Court held that the Plaintiffs had not carried the significant burden to show that the term "parallel" should be given any construction other than its plain and ordinary meaning. If the Plaintiffs believed the Court's finding was a manifest error of law, they could have and probably should have filed an appropriate motion then. Nevertheless, the Court has now once again reviewed its decision and finds no error. Applying the relevant constructions at the summary judgment stage, the Court found that the accused device does not infringe the

"parallel" limitation. Reviewing that ruling, the Court again finds no error.[2] The Accused Tool is essentially comprised of one straight tube, as can be seen in photos in the Court's prior order (Doc. No. 53 at 7). Even if the Accused Tool is viewed as having two separate sections (the wheel section and the handle section), then those sections meet in the middle of the tool. (*See id.*). Accordingly, the sections, or "axes" in the '224 Patent's terms, cannot be considered "parallel" under the definition of "extending in the same direction, everywhere equidistant, *and not meeting.*" (Doc. No. 35 at 15) (emphasis added). Therefore, the Court finds no error in its prior order holding as such. Accordingly, the Plaintiffs' motion to reconsider is denied.

### III. Defendants' Second Motion for Summary Judgment

#### A. Legal Standard

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)). Once a movant submits a properly supported motion, the burden shifts to the non-movant to show that the Court should not grant the motion. *Celotex*, 477 U.S. at 321–25.

---

[2] Plaintiffs did not satisfy the heavy burden to show that the patentee acted as his own lexicographer, so the Court construed the terms parallel and collinear with their ordinary and customary meanings. (*See* Doc. No. 35 at 16–18). "The ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Pfizer, Inc. v. Teva Pharm., USA, Inc.*, 429 F.3d 1364, 1375 (Fed. Cir. 2005) (alterations omitted). The Plaintiffs further did not demonstrate that persons of ordinary skill in the relevant art would understand that the terms would have any meaning other than their usual dictionary definitions. Accordingly, the Court defined "parallel" as "extending in the same direction, everywhere equidistant, and not meeting" and defined "collinear" as "lying on or passing through the same straight line." (Doc. No. 35 at 17, 18). These definitions do indeed lead to the inescapable conclusion that, in this context, the terms are mutually exclusive. If a line is "collinear" with another line it either lies on that line and is indistinguishable from it, or it passes through the line and intersects it. Either way, collinear lines cannot be parallel. Consequently, Plaintiffs' position is not supported by the evidence as interpreted by well-established patent-law principles; nor is it supported by common, everyday usage.

The non-movant then must provide specific facts showing that there is a genuine dispute. *Id.* at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must draw all reasonable inferences in the light most favorable to the nonmoving party in deciding a summary judgment motion. *Id.* at 255. The key question on summary judgment is whether there is evidence raising an issue of material fact upon which a hypothetical, reasonable factfinder could find in favor of the nonmoving party. *Id.* at 248.

Evaluation of a motion for summary judgment of noninfringement is a two-step process. *See Abbott Labs. v. Sandoz, Inc.*, 566 F.3d 1282, 1288 (Fed. Cir. 2009), *cert. denied*, 558 U.S. 1136 (2010). First, the claims are properly construed and then those construed terms are compared to the accused product. *Id.* "[A] determination of noninfringement, either literal or under the doctrine of equivalents, is a question of fact." *Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*, 559 F.3d 1308, 1312 (Fed. Cir. 2009). To infringe a claim literally, the accused product must incorporate every limitation in a valid claim, exactly. *Zodiac Pool Care, Inc. v. Hoffinger Indus., Inc.*, 206 F.3d 1408, 1415 (Fed. Cir. 2000). "Absent any limitation of a patent claim, an accused device cannot be held to literally infringe the claim." *Id.* To infringe a claim under the doctrine of equivalents, the accused product must incorporate every limitation in a valid claim by a substantial equivalent. *Id.* As with literal infringement, there can be no infringement under the doctrine of equivalents if one limitation of a claim is not present in the accused device. *Id.*; *see also Crown Packaging*, 559 F.3d at 1312 ("A finding of infringement under the doctrine of equivalents requires a showing that the difference between the claimed invention and the accused product was insubstantial.").

7

**B.     Analysis**

The Defendants' arguments as to why they are entitled to summary judgment are:

(1) the wheels of the Accused Tools are restricted by a bolt and are, therefore, <u>not mounted for unrestricted rotation</u> so that <u>the wheel assembly rollingly engages the racked tubular</u> as required by the claims, (2) Plaintiffs have failed to provide evidence to support its untimely 'bolts-removed' theory, and (3) Plaintiffs are deemed to have admitted noninfringement by virtue of their failure to respond to Defendants' requests for admission.

(Doc. No. 58 at 5). The last of these arguments is moot because the Court previously granted the Plaintiffs' request to withdraw their deemed admissions. (*See* Doc. No. 65). The Defendants previously made the first two arguments in their first summary judgment motion, to which the Court held:

> At this point, the Court cannot say as a matter of law that the Accused Tools do not meet the "unrestricted rotation" limitation. Both parties have provided scant evidence and argument as to this point. It seems to the Court that both parties could benefit from further discovery on this issue to better illuminate it. Therefore, the Court denies summary judgment now, but leaves open the possibility that the Defendants may move for summary judgment on this issue again after further discovery has taken place.

(Doc. No. 53 at 9–10). Pursuant to the above language and having engaged in further discover, the Defendants now move for summary judgment a second time.

Claim 1 of the '224 Patent claims:

1. A tool for manually moving a racked tubular along a raised horizontal surface, wherein the racked tubular has an open end continuous with an inner diameter, the tool comprising:
a shaft having a handle section with a longitudinal axis and a wheel section with a longitudinal axis, wherein the longitudinal axes of the handle section and the wheel section are collinear;
*a wheel assembly mounted for unrestricted rotation about the longitudinal axis of the wheel section of the shaft*; and
wherein the wheel section of the shaft and the wheel assembly mounted thereon form a distal end of the tool, and wherein the distal end of the tool is configured to be received inside the racked tubular so that the wheel assembly rollingly engages with the racked tubular.

'224 Patent col. 7 ll. 9–24 (emphasis added). The Court previously held that the term "unrestricted" should be construed to have its plain and ordinary meaning, which is "not restricted." (Doc. No. 35 at 12). In addition, claims 1–5, 9–12, and 15 are dependent claims that inherently incorporate all of the limitations of Claim 1.

The Court must now determine: whether the bolts in the Accused Tool restrict the rotation of the wheel assembly such that the Accused Tool does not meet the "unrestricted" limitation as a matter of law; and, if so, whether the Plaintiffs are procedurally permitted to advance their "bolts-removed" theory; and, if so, whether there is a genuine dispute of material fact as to whether the Defendants do in fact remove the bolts of the Accused Tool when using it.

First, the Defendants argue that the Accused Tool with bolts in place does not infringe the '224 Patent as a matter of law because it "lacks the 'not restricted' claim limitation required by the claim language as construed, because the wheel assembly is secured by bolts." (Doc. No. 58 at 10). In support of this contention, the Defendants' point to statements by the Plaintiffs' attorney at the *Markman* hearing in which counsel admitted that the Accused Tool's bolts prevent its wheels from rolling 360 degrees (*see* Doc. No. 42-2) and to a statement in the Plaintiff's expert's report in which he provides the bolt as an example of a "restriction to rotation" (Doc. No 61-4, Ex. D).

In their response to the motion, the Plaintiffs state: "To be clear, Plaintiffs allege that the Accused Products *with the bolts in place* have the capability of functioning as described in the claims because (1) the Court's claim construction does not require 360-degree rotation, and (2) the device is 'capable of' 360-degree rotation because the bolts are easily removed." (Doc. No. 60 at 9). This is the only argument the Plaintiffs made regarding infringement when the Accused Tool's bolts are in place, and it is not enough to overcome summary judgment, Accordingly, the Court

9

holds that the Defendants are entitled to a finding of noninfringement when the bolts of the Accused Tool are in place.

The Plaintiffs other theory of infringement of the "unrestricted" limitation is that the Defendants remove the bolts of the Accused Tool before using it. The Defendants argue that this argument is procedurally improper. If the Plaintiffs are not permitted to advance their "bolts-removed" theory, as the Defendants argue, then the Defendants are entitled to summary judgment of noninfringement of the "unrestricted" limitation because the Court has already found the Plaintiffs' argument of infringement with the bolts in place fails. The Defendants argue that the Plaintiffs should not be allowed to proceed on the "bolts-removed" theory because the Plaintiffs did not plead it specifically enough in their complaint or in their infringement contentions. The Plaintiffs respond that their pleadings are sufficient because the Court's Local Patent Rules do not require "that every contention that will arise in the litigation be disclosed" and that the "bolts-removed" argument was "fully aired before the Court in the *Markman* hearing held in June 2020." (*Id.* at 8, 9).

Rule 3-1 of the Rules of Practice for Patent Cases in the Southern District of Texas requires the plaintiff to file Preliminary Infringement Contentions, which must contain information such as each claim of each patent-in-suit allegedly infringed, identification of each accused device, and identification of the location of each element of each asserted claim in the accused device. Here, the Defendants concede that the Plaintiffs did file such contentions. (*See* Doc. No. 58 at 6). This document and the Plaintiffs' amended complaint demonstrate that they have accused the Defendants' device of infringing Claim 1 of the '224 Patent, which includes the "unrestricted" limitation. (*See* Doc. No. 44, Doc. No. 1, Ex. 2). At that stage, the Plaintiffs were not required to specify exactly *how* they claim that the Accused Tool infringes the particular claim element to be

10

able to proceed on the theory of infringement. Moreover, the Defendants have not been surprised or prejudiced by this theory because they acknowledge that they have had notice of it since at least as early as the *Markman* hearing. (Doc. No. 62 at 5). The Plaintiffs may proceed on their "bolts-removed" theory.

The Court, having decided the Plaintiffs may proceed on this theory, must still find that the Plaintiffs have presented competent summary judgment evidence that the Defendants are, in fact, removing the bolts of the Accused Tool in order to use it. The Plaintiffs have offered the declaration of Chuck Henkes, a Tubular Rollers employee, who asserts that he saw that employees of Nabors were removing the bolts from the Accused Tool before using it (Doc. No. 60, Ex. 1). In addition, they have provided photographs apparently showing the same. (*Id.*, Ex. 4, 5). While this evidence is not overwhelming, it is enough to at least demonstrate there is a genuine dispute of fact as to whether the Defendants infringe the '224 Patent by removing the bolts from the Accused Tool.

Last, the Defendants argue that, even if there is evidence to support the Plaintiffs' "bolts-removed" theory, summary judgment for Defendant Maximus should still be granted because that evidence only pertains to Nabors employees. The Defendants are correct that the Plaintiffs' evidence only implicates Nabors employees once the Accused Tool is used on Nabors rigs. The Plaintiffs' own witness acknowledged during his deposition that, when Maximus ships the Accused Tool, the bolts are in place. (*See* Doc. No. 62-2 at 6). Therefore, the Accused Tool as Maximum produces it does not infringe the '224 Patent because this Court has already held that the Accused Tool does not infringe when its bolts are in place. Accordingly, summary judgment for Maximus is appropriate.

11

## IV. Conclusion

For the foregoing reasons, the Court hereby denies the Plaintiffs' motion for reconsideration (Doc. No. 54) and hereby denies in part and grants in part the Defendants' second motion for summary judgment (Doc. No. 58).

Signed at Houston, Texas, this __13th__ day of August, 2021.

                                              Andrew S. Hanen
                                              United States District Judge