United States District Court
Southern District of Texas
**ENTERED**
December 16, 2021
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TUBULAR ROLLERS, LLC, ROLLING TOOL, INC., and H. LESTER WALD, | § § § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 4:19-CV-3113 |
| MAXIMUS OILFIELD PRODUCTS, LLC, and NABORS DRILLING TECHNOLOGIES, USA, INC., | § § § § | |
| Defendants. | § § | |

## <u>ORDER</u>

Pending before the Court is the Motion for Partial Summary Judgment of No Lost Profits filed by Defendants Maximus Oilfield Products ("Maximus") and Nabors Drilling Technologies ("Nabors") (collectively "Defendants) (Doc. No. 71). Plaintiffs Tubular Rollers, LLC ("Tubular"), Rolling Tool, Inc. ("Rolling Tool"), and H. Lester Ward ("Ward") (collectively "Plaintiffs") responded in opposition to the Motion (Doc. No. 79), and Defendants replied in support (Doc. No. 81). After reviewing the briefs and applicable law, the Court denies the Motion.

## I.   Background

Plaintiffs are the owners of the Patents-in-Suit, all of which relate to a tool for moving "tubulars," which are oil and gas drilling pipes. The Patents cover the tubular-moving tool and related method. The '224 Patent was originally issued in 2015. (Doc. No. 28, Ex. 1). The '009 Patent was a continuation of the '224 Patent and was issued in 2016. (Doc. No. 28, Ex. 2).

Lastly, the '915 Patent was a continuation of the '009 Patent (and thus a further continuation of the '224 Patent). (Doc. No. 28, Ex. 3). The '915 Patent was issued in 2017. (*Id.*).

According to Plaintiffs, tubulars "are typically hollow steel or aluminum alloy pipe [that] come in a variety of sizes, strengths, and wall thickness, and are typically 30 to 45 feet in length. Each piece of pipe is very heavy, weighing between 1100 and 3600 pounds." (*Id.* at 7). The customary technique of stacking tubulars is for workers to stand on both ends of the pipe and roll each piece to a pipe rack where the tubulars are stacked several layers deep. (*See id.*). This "hand-over-hand" technique is time consuming and can result in injuries to the workers. (*See id.* at 7–8).

The Patents-in-Suit first came into being in 2014 when Andrew J. Cogburn, Jr. invented a tool to assist in moving the tubulars. (*See id.* at 8). According to Plaintiffs, the tool covered by and used in conjunction with the Patents "is inserted into the [tubular] and has a handle that extends out from [it], allowing the workers to hold the handle of the tool rather than touching the [tubular] itself. The inventions facilitate moving pipe and also reduce injuries associate with handling the pipe, such as hand injuries." (*Id.*).

According to Plaintiffs' Complaint, Defendant Maximus manufactures "pipe-handling tools" that allegedly infringe the Patents-in-Suit and sells those tools to Defendant Nabors Drilling, who uses them in its drilling operations. (Doc. No. 1 at 6–12). Defendants, of course, disagree; they assert that the accused product ("Accused Tool") "is not a rolling tool, but a sliding tool." (Doc. No. 29 at 5–6). Additionally, Defendants claim the product is different because, unlike the invention covered by the Patents, it has "circular spacers—typically, greased circular spacers—that remain stationary while the racked tubular rolls." (*Id.* at 6) (emphasis and footnote omitted).

The Court held a *Markman* hearing in this case and subsequently issued a Memorandum and Order on Claim Construction. (Doc. No. 35). The Plaintiffs' proposed construction of the term "parallel"—the term at issue for the hearing—was "everywhere equally distant, including collinear" and the Defendants' proposed construction was "extending in the same direction, everywhere equidistant, and not meeting." (*See id.*). The Court adopted the Defendants' proposed construction, finding that it was basically the plain and ordinary meaning of "parallel." The Court further explained:

> Plaintiffs argue that the specification clarifies that parallel axes must include a smaller subset of collinear axes. (*See* Doc. No. 28 at 13 (quoting Doc. No. 28, Ex. 1 at 16 ("Preferably these axes are parallel and most preferably these axes are collinear.")). Additionally, Plaintiffs assert that the Patents' claims depend on "parallel" and "collinear" not being mutually exclusive. (*Id.* at 14–15). Nothing in this order precludes Plaintiffs from arguing that collinear axes are parallel. Indeed, at the *Markman* Hearing, Plaintiffs' counsel suggested they would make such an argument. By the same token, however, the Court will not stop Defendants from arguing that collinear lines are not parallel. Regardless of which party ultimately prevails on this issue, it is not relevant to the Court's construction of the term "parallel."

(*Id.* at 15–16).

The Defendants then moved for summary judgment, which this Court granted in part and denied in part (Doc. No. 53). In doing so, the Court explained:

> The images [of the accused device] show clearly that, even if the wheel section and handle section . . . could be considered two separate axes, those axes are certainly not parallel. The operative part of the definition of the term "parallel" here is "not meeting." Whether defined by this Court or by Euclid, parallel lines, by definition, do not meet. Here, if the Accused Tools have more than one axis, those axes either meet in the center of the tool or they are collinear . . . . Plaintiffs have attempted to argue that "parallel axes must include a smaller subset of collinear lines," (Doc. No. 48 at 6), but the terms "parallel" and "collinear," as defined by this Court using their ordinary and customary meanings, are in fact mutually exclusive. "Parallel" means "extending in the same direction, everywhere equidistant, and not meeting." (Doc. No. 35 at 16). "Collinear" means "lying on or passing through the same straight line." (*Id.* at 17). If two axes are equidistant and do not meet, then, necessarily, they never lie on or pass through the same straight line. As evident from the images, it is possible that the Accused

3

Tools have two axes that are collinear, but it is not possible that the same two axes are parallel.

(*Id.* at 8).

The Plaintiffs subsequently moved the Court to reconsider the above language from the summary judgment order (Doc. No. 54), and the Court denied the motion. (Doc. No. 75). Defendants filed a second motion for summary judgment, (Doc. No. 58), which the Court granted in part (Doc. No. 75).[1]

Defendants have now filed a Motion for Partial Summary Judgment of No Lost Profits. (Doc. No. 71). Plaintiffs have responded in opposition (Doc. No. 79), and Defendants filed a reply in support. (Doc. No. 81). After reviewing the motion, the briefs, and relevant law, the Court denies the motion.

## II.    Legal Standard

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

Once a movant submits a properly supported motion, the burden shifts to the non-movant to show that the Court should not grant the motion. *Celotex*, 477 U.S. at 321–25. The non-movant then must provide specific facts showing that there is a genuine dispute. *Id.* at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for

---

[1] In its Order, the Court held that the Defendants were entitled to a finding of noninfringement when the bolts of the Accused Tool are in place. This ruling extinguished all claims against Defendant Maximus Oilfield Products, LLC.

the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must draw all reasonable inferences in the light most favorable to the nonmoving party in deciding a summary judgment motion. *Id.* at 255. The key question on summary judgment is whether there is evidence raising an issue of material fact upon which a hypothetical, reasonable factfinder could find in favor of the nonmoving party. *Id.* at 248.

### III.    Analysis

Defendants argue that summary judgment should be granted because Plaintiffs have failed to demonstrate the existence of a genuine issue of material fact regarding whether acceptable noninfringing substitutes to the Plaintiffs patented tool exist, and consequently, Plaintiffs have failed to meet their burden to prove lost profits.

When a court finds a patent has been infringed, it "shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court." 35 U.S.C. § 284. "To be entitled to damages beyond a reasonable or established royalty, a claimant must prove his actual damages, that is, his entitlement to lost profits." *Water Techs. Corp. v. Calco*, Ltd., 850 F.2d 660, 671 (Fed. Cir. 1988). A lost profits award is appropriate only if the patent owner can prove there was a reasonable probability that "but for" the infringement, it would have made the infringer's sales. *Kearns v. Chrysler Corp.*, 32 F.2d 1541, 1551 (Fed. Cir. 1994). To determine whether "but for" causation is present, the Federal Circuit often applies the four-part test set forth in *Panduit Corp. v. Stahlin Brothers Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir. 1978); *see, e.g.*, *Kearns*, 32 F.3d at 1551. The four-part test is as follows:

> To obtain as damages the profits on sales he would have made absent the infringement . . . a patent owner must prove (1) demand for the patented product, (2) absence of acceptable noninfringing substitutes, (3) his manufacturing and marketing capability to exploit the demand, and (4) the amount of profit he would

have made.

*Panduit*, 575 F.2d at 1156.

At issue now is the second factor. "To be an acceptable non-infringing substitute, the substitute 'must be available or on the market at the time of infringement.'" *LaserDynamics, Inc. v. Quanta Computer, Inc.*, No. 2:06-CV-348, 2011 WL 197869, at *3 (E.D. Tex. Jan. 20, 2011) (quoting *Grain Processing Corp. v. Am. MaizeProds. Co.*, 185 F.3d 1341, 1350 (Fed. Cir. 1999)). "To prove the absence of acceptable, non-infringing alternatives, the patentee may prove either that the potential alternative was not acceptable to potential customers or was not available at the time." *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 875 F.3d 1369, 1380 (Fed. Cir. 2017) (citing *Grain*, 185 F.3d at 1353–55). Importantly, however, "[a]n alternative does not need to be on the market to be available." *Id.*

Defendants argue in their motion that they have proven that acceptable noninfringing alternatives to the '224 Patent exist. To support their contention, they point to the testimony of their technical expert Clayton Penney, who, among other things, opined that there are at least two examples of commercially acceptable, noninfringing alternatives that were used in the field at the time of the alleged infringement: Nabors Equipment Standard ESC-058 ("Pipe Roller I") and ES-032(74) ("Pipe Roller II") (Doc. No. 71). Moreover, Defendants argue that Plaintiffs have failed to offer any sufficient evidence to rebut this contention and, as a result, they are entitled to summary judgment. Specifically, Defendants highlight that Plaintiffs' technical expert failed to address the existence of acceptable noninfringing substitutes and assert that the opinion of Plaintiffs' damages expert is conclusory and fails to raise a genuine issue of material fact.

To rebut Defendants' contention, Plaintiffs first allege that Pipe Roller II was not available at the time of infringement, a requirement of the *Panduit* test. Plaintiffs point to the

6

deposition of Nabors' Health, Safety and Environment Supervisor Matt Dolson, who testified that the Plaintiffs' tool had advantages those competing products did not. Plaintiffs offer additional support for Mr. Dolson's statement by explaining that the safety training video, referenced by Defendants in their Motion, actually lends support to the contention that Plaintiffs tool, with its internal rolling ability, offers advantages that other external rolling tools do not. Plaintiffs argue that this evidence raises as fact issue that the external rolling tools were not in fact acceptable alternatives.[2]

After review of the briefs, the relevant law, and the summary judgment evidence, the Court finds that Plaintiffs have raised a genuine issue of material fact with respect to the existence of acceptable noninfringing alternatives by calling into question both the availability of potential alternatives and the relative advantages offered by the patented tool which put into question whether the alleged alternatives truly are acceptable noninfringing alternatives. Therefore, the Court denies summary judgment on lost profits.

## Conclusion

For the foregoing reasons, the Court denies Defendants' Motion for Partial Summary Judgment of No Lost Profits. (Doc. No. 71).

Signed at Houston, Texas, this 15th day of December, 2021.

_____
Andrew S. Hanen
United States District Judge

---

[2] Further, Plaintiffs point to the testimony of their damages expert, Darrell Harris. Harris stated that "there were no non-infringing substitute products or Nabors would have used such as an acceptable alternative device, avoiding infringement." (Doc. No. 79, Ex. D). The Court, however, found Harris to be unqualified to opine on this topic, and therefore Plaintiffs' reliance on this testimony is misplaced.