United States District Court
Southern District of Texas
**ENTERED**
December 16, 2021
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TUBULAR ROLLERS, LLC, *et al.*, | § | |
|    *Plaintiffs*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:19-CV-03113 |
| | § | |
| MAXIMUS OILFIELD PRODUCTS, LLC, | § | |
| *et al.*, | § | |
|    *Defendants*. | § | |

## ORDER

Before the Court is the Opposed Motion for Exceptional Case and Attorneys' Fees (Doc. No. 84) filed by Defendant Maximus Oilfield Products, LLC ("Maximus"). Plaintiffs Tubular Rollers, LLC, Rolling Tool, Inc., and H. Lester Wald (collectively, "Tubular") have responded in opposition (Doc. No. 91), to which Maximus has replied (Doc. No. 92). Also before the Court is a Bill of Costs filed by Maximus (Doc. No. 86), to which no response in opposition has been filed.

### I.

The controlling statute for the award of reasonable fees to the prevailing party in a patent case states: "The court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. It is clear from the statute's wording that Congress intended courts to award attorneys' fees only in rare circumstances. Merely losing a case is not enough. Traditionally, the "American" rule is that each party bears its own fees and costs, win or lose. *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 382 (2013). Section 285 does not change that general rule. Courts throughout the country have followed that rule almost without exception. One of those exceptions has been in situations in which Congress has specifically intervened and statutorily provided for fees. In 1946, Congress added 35 U.S.C. § 70 to provide for a discretionary fee award to the prevailing party in patent cases. In 1952, Congress re-codified § 70 as § 285 and added the phrase

"in exceptional cases." The Supreme Court has found that this additional phrase was added for clarification purposes only. *Gen. Motors Corp. v. Devex Corp.*, 461 U.S. 648, 653 (1983). In other words, where the intent behind this provision's adoption had always been to limit attorneys' fees to rare instances, the addition of the "exceptional" limitation was more or less consistent with what Congress' intent had always been. *See Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, 572 U.S. 545, 549 n.2 (2014). In the decades following the amendment, both district and circuit courts practiced what the Supreme Court described as a "holistic" approach to awarding fees under § 285. The Court used this adjective to convey that the decision makers had considered the totality of the circumstances on a case-by-case basis.

This individualized approach abruptly changed in 2005 when the Federal Circuit decided *Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.*, 393 F.3d 1378 (2005). The Court in *Brooks* attempted to define when a case was "exceptional." It stressed that a case was exceptional:

> [W]hen there has been some material inappropriate conduct related to the matter in litigation, such as willful infringement, fraud, or inequitable conduct in procuring the patent, misconduct during litigation, vexatious or unjustified litigation, conduct that violates Fed. R. Civ. P. 11, or like infractions. *See, e.g., Cambridge Prods. Ltd. v. Penn Nutrients, Inc.*, 962 F.2d 1048, 1050–51 (Fed. Cir. 1992); *Beckman Instruments, Inc., v. LKB Produkter AB*, 892 F.2d 1547, 1551 (Fed. Cir. 1989). Absent misconduct in conduct of the litigation or in securing the patent, sanctions may be imposed against the patentee only if both (1) the litigation is brought in subjective bad faith, and (2) the litigation is objectively baseless.

393 F.3d at 1381.

In *Octane Fitness*—the Supreme Court's decision abrogating *Brooks*—the Court described the post-*Brooks* progression as follows:

> The Federal Circuit subsequently clarified that litigation is objectively baseless only if it is "so unreasonable that no reasonable litigant could believe it would succeed," *iLOR, LLC v. Google, Inc.*, 631 F.3d 1373, 1378 (2011), and that litigation is brought in subjective bad faith only if the plaintiff "actually know[s]" that it is objectively baseless, *id.*, at 1377.

2

> Finally, *Brooks Furniture* held that because "[t]here is a presumption that the assertion of infringement of a duly granted patent is made in good faith[,]. . .the underlying improper conduct and the characterization of the case as exceptional must be established by clear and convincing evidence." 393 F.3d at 1382.

*Octane Fitness*, 572 U.S. at 550.

> The Supreme Court found the above-described *Brooks*-approach to be too "rigid":
>
> [T]he Patent Act does not define "exceptional," so we construe it "in accordance with [its] ordinary meaning." *Sebelius v. Cloer*, 569 U.S. 369, 376 (2013); *see also Bilski v. Kappos*, 561 U.S. 593, 603 (2010) ("In patent law, as in all statutory construction, '[u]nless otherwise defined, "words will be interpreted as taking their ordinary, contemporary, common meaning"'"). In 1952, when Congress used the word in § 285 (and today, for that matter), "[e]xceptional" mean "uncommon," "rare," or "not ordinary." Webster's New International Dictionary 889 (2d ed. 1934); see also 3 Oxford English Dictionary 374 (1933) (defining "exceptional" as "out of the ordinary course," "unusual," or "special"); Merriam-Webster's Collegiate Dictionary 435 (11th ed. 2008) (defining "exceptional" as "rare"); *Noxell Corp. v. Firehouse No. 1 Bar-B-Que Restaurant*, 771 F.2d 521, 526 (D.C. Cir. 1985) (interpreting the term "exceptional" in the Lanham Act's identical fee-shifting provision, 15 U.S.C. § 1117(a), to mean "uncommon" or "not run-of-the-mill").
>
> We hold, then, that an "exceptional" case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated. District courts may determine whether a case is "exceptional" in the case-by-case exercise of their discretion, considering the totality of the circumstances. As in the comparable context of the Copyright Act, "[t]here is no precise rule or formula for making these determinations,' but instead equitable discretion should be exercised 'in light of the considerations we have identified." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994).

*Octane Fitness*, 572 U.S. at 553–54.

To provide district courts with more specific direction, the Supreme Court, in footnote 6, emphasized certain factors it drew from copyright cases, suggesting a court could consider a "non-exclusive" list of factors including "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 554 n.6. Suffice it to say, while the Supreme Court in *Octane Fitness* broadened the factors a court could consider, it is also clear by the very

3

wording in § 285 and the *Octane Fitness* decision that the award of fees is not the rule; it is the exception, and it is an exception that should only be utilized in exceptional cases. *See id.*

In summary, a losing party (whether before or after *Brooks* and *Octane Fitness*) has never automatically faced having to pay attorneys' fees.

> That a patent plaintiff has lost on the merits is not enough to warrant a fee award under § 285; such awards are proper only when the plaintiff has acquired his patent by fraud or brings an infringement suit with no good faith belief that his patent is valid and infringed. *See, e.g., Bird Provision Co. v. Owens Country Sausage, Inc.*, 568 F.2d 369, 378 (5th Cir. 1978); *Parker v. Motorola, Inc.*, 524 F.2d 518, 535 (5th Cir. 1975) *cert. denied*, 425 U.S. 975 (1976); *Keystone Plastics, Inc. v. C & P Plastics, Inc.*, 506 F.2d 960, 967 (5th Cir. 1975); *Williamson-Dickie Mfg. Co. v. Hortex, Inc.*, 504 F.2d 983, 988–89 (5th Cir. 1974); *Garrett Corp. v. Am. Safety Flight Sys., Inc.*, 502 F.2d 9, 22–23 (5th Cir. 1974). The purpose of § 285 is to prevent gross injustice, and an award under that statute requires an unambiguous showing of extraordinary misconduct. *Seismograph Serv. Corp. v. Offshore Raydist, Inc.*, 263 F.2d 5, 28 (5th Cir. 1958); *Airtex Corp. v. Shelly Radiant Ceiling Co.*, 536 F.2d 145, 155 (7th Cir. 1976); *Stillman v. Edmund Sci. Co.*, 522 F.2d 798, 800 (4th Cir. 1975); *Scott Paper Co. v. Fort Howard Paper Co.*, 432 F.2d 1198 (7th Cir. 1970) *cert. denied*, 401 U.S. 913 (1971). We find no such showing here. We have found all of the relevant patent claims invalid, but it is far from clear that their invalidity, apparent after a full trial, should have been obvious to all parties all along. (Indeed, we may say that several of the defendants' theories purporting to prove invalidity strike us as dubious.) The district court cites no persuasive evidence to support its conclusory findings of bad faith prosecution. Nor is there any evidence that the plaintiffs sought to defraud the Patent Office by failing to disclose prior art. There is room for honest disagreement as to what prior art is pertinent. *Scott Paper,* 432 F.2d at 1204–05. A patent applicant who fails to disclose arguably relevant prior art runs the risk that his patent may later be invalidated because of the omission, but he is not liable for fees under § 285 unless he is guilty of deliberate misrepresentation or concealment. *Id.; Indiana General Corp. v. Krystinel Corp.*, 421 F.2d 1023, 1033–34 (2d Cir. 1970) *cert. denied*, 398 U.S. 928 (1970). Finally, we reject the contention that the plaintiffs' alleged improper conduct during discovery supports a fee award. Assuming such improprieties took place, the proper remedy lies under Fed. R. Civ. P. 37 and not under § 285. *Airtex,* 536 F.2d at 155; *Stillman,* 522 F.2d at 800.

*Arbrook, Inc. v. Am. Hosp. Supply Corp.*, 645 F.2d 273, 279 (5th Cir. 1981).

Maximus, in its motion, tacitly acknowledges the narrow window that exists for awarding attorneys' fees. Nonetheless, Maximus argues that this case is "exceptional" and that it qualifies

4

for an attorneys' fees award in this case as opposed to the prevailing party in a run of the mill patent case. It hinges this argument on the premise that Tubular acted unreasonably in a variety of ways and that its unreasonable conduct caused Maximus to incur the fees that it otherwise would never have had to incur.

Maximus claims that Tubular: 1) prematurely filed this lawsuit; 2) sought an unreasonable amount of damages; and 3) violated Fed. R. Civ. P. 11 by the manner in which it conducted the litigation and by the positions it maintained. The Court will address each proposition in turn.

Maximus claims that Tubular filed suit prematurely in that it should have waited for a response to its demand letter. Tubular's counsel sent Maximus a demand letter on July 25, 2019. The letter requested a response within 15 days. Maximus received that letter on August 6, 2019. In that demand letter, counsel sought an immediate cessation of the manufacture, use, and sale of Maximus' product and requested that Maximus provide Tubular with various forms of sales information. In an email response dated August 17, 2019, Maximus asked to postpone any response until August 30, 2019, after it had a chance to consult counsel. Three days later, rather than waiting as Maximus requested, Tubular filed this lawsuit. While most courts certainly hope that business entities resolve their disputes prior to filing a lawsuit, the act of filing a lawsuit, even if it is before negotiations, is not exceptional, nor is it a sign of unfair or unethical conduct.

Maximus next claims that Tubular sought an unreasonable amount of damages. According to movant, Tubular sought $1.2 million in damages from the start, despite knowing that Maximus' sales totaled only $151,330. Again, most courts wish that all parties to lawsuits were realistic in their damage assessments, but the fact that parties have different views as to damages occurs in almost every case. Moreover, in this instance, there can be arguments made for differing measures of damages, and the amount actually awarded may depend on the remedy sought or the one

5

available.[1]

Further, and perhaps more vehemently, Maximus asks this Court to focus on Tubular's conduct during the litigation. More specifically, it claims that Tubular caused costly delays and harassed Maximus (and its customers). With regard to the former, Maximus complains about Tubular waiting until the last minute to file various pleadings and reports. It also complains that Tubular missed discovery deadlines and filed items without leave of court. This Court finds that these allegations, at least as to some of Tubular's actions, are accurate; however, waiting to the last minute to comply with a deadline seems to be more the rule than the exception in all litigation. Missing a deadline, while certainly more serious, may be grounds for sanctions; but absent much more it does not transform this case into the category of exceptional. Moreover, the Court notes, in the very motion in which it criticizes Tubular for delaying the outcome, Maximus admits Tubular's counsel agreed to allow Maximus more time to meet certain pleading obligations. (Doc. No. 84 at 6). Finally, the fact that Tubular copied Chevron Corporation with certain Tubular-Maximus correspondence prior to suit does not propel this lawsuit into the exceptional category.

Lastly, Maximus claims that certain positions taken by Tubular during the course of this lawsuit were unreasonable and unsupportable. For instance, movants pinpoint the Plaintiffs' position on damages and claim construction as being totally unreasonable. This Court has already addressed the damages question. With regard to the claim construction issue, Maximus finds fault with the fact that Tubular maintained a position that the Court did not find to be meritorious, that it sought a rehearing on the issue and the fact that it still maintains its position even after this Court's ruling on first the claim construction and later on the summary judgment motions. While this Court still does not find Tubular's position on those issues to be correct, it does not find them

---

[1] The Court notes that Tubular disputes the use of the $1.2 million figure and points out that Defendants provide no citation to the record as to where that figure originates.

6

to be unreasonable or that counsel was unethical or unprofessional in the manner in which Tubular's positions were presented.

The fact that Tubular has tried on more than one occasion to convince the Court to amend its ruling is not in and of itself inappropriate conduct, despite the fact that it may cost the opposing side more in fees and costs and may subject the Court to more work. The Court reminds Maximus that it took two motions for summary judgment for it to prevail. (Doc. Nos. 42, 58).

This Court has viewed its above-discussion with an eye toward the *Octane Fitness* factors. It finds that Plaintiffs' actions were not frivolous, unreasonable, or motivated by malicious or evil intent. This includes its view and approach as to both the factual and legal aspects of the case. Further, Maximus has contended that it is the smaller, more financially vulnerable firm, and has even proffered evidence in support of that position. (Tubular does not really contest this fact.) Nevertheless, the difference in size or resources, at least under these facts, does not compel the need to advance considerations of compensation or deterrence. The Court does not find this case to be exceptional under 35 U.S.C. § 285 as that standard has been interpreted by the Supreme Court and the Federal Circuit. The Motion to Award Attorneys' Fees (Doc. No. 84) is therefore denied.

The Bill of Costs (Doc. No. 86) is granted and the Court finds the overall costs expended ($18,537.73) to be reasonable. Tubular did not file any opposition to the Bill of Costs. The Court likewise finds the split of the costs between the Defendants to be reasonable and equitable. It therefore awards Maximus costs in the amount of $9,268.87.

SIGNED at Houston, Texas this 16th day of December, 2021.

Andrew S. Hanen
United States District Judge